NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3251-14T1

SHARON KELLY O'BRIEN,

 Plaintiff-Appellant,

v.

TELCORDIA TECHNOLOGIES, INC.,

 Defendant-Respondent.
___________________________________

 Argued January 10, 2017 – Decided July 17, 2017

 Before Judges Fisher, Ostrer and Leone.

 On appeal from the Superior Court of New
 Jersey, Law Division, Middlesex County, Docket
 No. L-5516-03.

 Kevin Barber argued the cause for appellant
 (Niedweske Barber Hager, LLC, attorneys; Mr.
 Barber and Christopher W. Hager, of counsel
 and on the briefs).

 Colleen M. Duffy argued the cause for
 respondent (McElroy, Deutsch, Mulvaney &
 Carpenter, LLP, attorneys; Francis X. Dee and
 Ms. Duffy, on the brief).

PER CURIAM

 This appeal returns to us after a remand. O'Brien v.

Telcordia Techs., Inc., 420 N.J. Super. 256 (App. Div.), certif.
denied, 210 N.J. 479 (2011). The case began in 2003 when Sharon

O'Brien sued her former employer, Telcordia Technologies, Inc.,

alleging it discriminated against her based on her age when it

laid her off. We reversed the trial court's initial grant of

summary judgment in defendant's favor on narrow grounds: namely,

that it failed to adequately consider a certification containing

hearsay statements by company officers discussing an explicitly

discriminatory force adjustment policy.

 On remand, the trial court conducted a Rule 104 hearing on

the certification's contents, which included testimony from some

of the hearsay declarants and the certification's signor. The

court then ruled that the certification was inadmissible and again

granted summary judgment in defendant's favor. We affirm.

 I.

 We need not thoroughly review the facts, as we reviewed them

at length in our previous opinion. O'Brien, supra, 420 N.J. Super.

at 260-62. Suffice it to say, plaintiff was a long-time Telcordia

employee who served as a managing director in its customer service

department. She was laid off in 2002 along with 786 others, while

defendant was in the midst of major multi-year force reduction.

 Plaintiff, who was fifty-one at the time, alleged she was

fired because of her age. After years of litigation, the trial

court granted summary judgment in defendant's favor.

 2 A-3251-14T1
Specifically, the court concluded that plaintiff had failed to

demonstrate that defendant's legitimate business reasons behind

the layoff were pretextual. See McDonnell Douglas Corp. v. Green,

411 U.S. 792, 802-05, 93 S. Ct. 1817, 1824-26, 36 L. Ed. 2d 668,

677-80 (1973). We reversed the trial court's grant of summary

judgment, but not for any positive error in the court's findings.

Indeed, in an unpublished portion of our opinion, we reviewed at

length and affirmed the court's conclusions that Telcordia had a

legitimate business reason to lay off plaintiff and that plaintiff

had failed to provide "substantial evidence of pretext." O’Brien

v. Telcordia Techs., Inc., No. A-4021-07 (App. Div. June 13, 2011)

(slip op. at 19-31), certif. denied, 210 N.J. 479 (2011).

 Nevertheless, we reversed the trial court because we were

concerned that it incompletely considered the admissibility of a

three-page certification signed by another Telcordia employee,

Stephen Sperman.1 Sperman worked in the same customer service

1
 In addition to being potentially relevant under a McDonnell
Douglas analysis, the certification also may have supported a
factual claim that Telcordia had mixed motives for terminating
plaintiff. Cf. Price Waterhouse v. Hopkins, 490 U.S. 228, 244-
47, 109 S. Ct. 1775, 1787-89, 104 L. Ed. 2d 268, 284-86 (1989).
We questioned but declined to decide whether the mixed motives
framework was appropriate for analyzing an age discrimination case
brought under the New Jersey Law Against Discrimination, N.J.S.A.
10:5-1 to -42. If the Sperman certification were found to be
inadmissible, that would moot this legal question because the
record would lack sufficient evidence of discrimination under any
standard. O'Brien, supra, 420 N.J. Super. at 270.

 3 A-3251-14T1
department as plaintiff when he was laid off in November 2002.

He, like plaintiff, sued defendant for age discrimination, but

ultimately lost in arbitration.

 Sperman's certification, submitted in October 2007, reported

statements by two officers of the company: John Musumeci, his

immediate supervisor, and Linda Apgar, a recruiting manager in the

human resources department. According to the certification,

Musumeci announced at a staff meeting in the summer of 2002 that

the company was implementing a "going forward" force adjustment

policy that would incorporate an employee's age and pension

eligibility in layoff decisions. He allegedly stated that

"Telcordia's human resources department mandated" the policy.

When Sperman challenged the policy's propriety, Musumeci

reportedly responded that "he was told by . . . Telcordia's human

resources to follow this 'going forward' policy and he was going

to follow those orders." Sperman certified he relayed his concern

over the policy to Apgar, who also informed Sperman the policy was

"to be followed."

 We noted that the trial court had not sufficiently addressed

the admissibility of these hearsay statements within the

certification. O'Brien, supra, 420 N.J. Super. at 269. We also

lacked a sufficient record "to independently evaluate" the

evidence's admissibility and weight. Ibid. We thus kept

 4 A-3251-14T1
plaintiff's cause of action alive, "hanging by the slender thread"

of the evidence in the Sperman certification, and required the

trial court to examine the admissibility of that evidence. Id.

at 272.

 On remand, the trial court held a Rule 104 hearing at which

Musumeci, Apgar, and Sperman testified. Musumeci and Apgar both

denied they made the statements attributed to them in the

certification. They further asserted they played no role in

plaintiff's firing: Musumeci was never plaintiff's supervisor, and

Apgar's role in the company solely involved recruitment and

employee placement at the time.2

 At the hearing, Sperman's account of Musumeci's statements

differed markedly from his certification. Sperman denied Musumeci

explicitly "said he wanted [to fire] people based upon pension

eligibility." Instead, he testified that Musumeci repeatedly

asked the directors which of their employees were pension eligible.

Sperman explained that the certification recorded his

"understanding [of] what [Musumeci] was driving at" from those

questions. The hearing also reviewed transcripts from Sperman's

arbitration hearing, in which he offered an even less troubling

2
 We previously noted, Musumeci and Apgar "played no role in the
lay-off of plaintiff, and indeed, Musumeci appears to have been
laid off prior to plaintiff." O'Brien, supra, 420 N.J. Super. at
269-70.

 5 A-3251-14T1
account of Musumeci's words. However, Sperman denied the accuracy

of this prior summary from the arbitration hearing.

 After reviewing the testimony, the court concluded the

certification was inadmissible on three independent grounds:

First, Sperman effectively recanted the certification, making it

a sham affidavit. Second, having lost significant evidential

value in light of the hearing, the certification was unduly

prejudicial under N.J.R.E. 403. Third, the certification

contained inadmissible hearsay. The court granted defendant's

motion for summary judgment a second time. As we agree with the

trial court's hearsay analysis, which provides an independent

basis to reject the certification, we affirm.

 II.

 "[T]he decision to admit or exclude evidence is one firmly

entrusted to the trial court's discretion." Estate of Hanges v.

Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384 (2010).

Accordingly, we review evidentiary decisions for abuses of that

discretion. We are to uphold such decisions when supported by

sufficient credible evidence in the record. Ibid. We also defer

to factual findings made pursuant to a Rule 104 hearing. State

v. Goodman, 415 N.J. Super. 210, 225 (App. Div. 2010), certif.

denied, 205 N.J. 78 (2011). Conversely, if the trial court applies

the wrong legal test when analyzing admissibility, we apply de

 6 A-3251-14T1
novo review. Konop v. Rosen, 425 N.J. Super. 391, 401 (App. Div.

2012).3

 Rule 1:6-6 requires that all certifications "set forth only

those facts which are admissible in evidence." Accordingly, any

certification that includes hearsay "may only be considered if

admissible pursuant to an exception to the hearsay rule." New

Century Fin. Servs., Inc. v. Oughla, 437 N.J. Super. 299, 317

(App. Div. 2014); Pressler & Verniero, Current N.J. Court Rules,

cmt. 1 on R. 1:6-6 (2017). When a statement includes multiple

layers of hearsay, each layer must independently meet an exception.

N.J.R.E. 805; Estate of Hanges, supra, 202 N.J. at 375 n.1; Konop,

supra, 425 N.J. Super. at 402. The proponent of the hearsay bears

the burden. See State v. Miller, 170 N.J. 417, 426 (2002).

 Plaintiff argues that Musumeci's and Apgar's statements

constitute admissions by a party's agent as defined by N.J.R.E.

803(b)(4). Accordingly, their admissibility hinges on whether the

declarants were agents of defendant speaking on a "matter within

3
 We reject plaintiff's contention that we should conduct a de
novo review of the record in reviewing both the trial court's
rejection of the Sperman certification and the grant of summary
judgment. The de novo standard applies only to the summary
judgment decision after applying an abuse-of-discretion standard
of review to the trial court's evidential ruling. See Estate of
Hanges, supra, 202 N.J. at 384-85.

 7 A-3251-14T1
the scope of the agency or employment" at that time. N.J.R.E.

803(b)(4).

 The exception relies on basic principles of agency, see 4

Wigmore on Evidence § 1078, at 162 (Chadbourn rev. 1972), to

construe a declarant's statement as a "vicarious admission[]" by

the party itself, 2D New Jersey Practice: Evidence Rules Annotated,

comment on N.J.R.E. 803(b)(4) (John H. Klock) (3d ed. 2009). Its

application requires a highly fact-sensitive inquiry into the

statement's subject-matter and the declarant's scope of authority.

See Spencer v. Bristol-Meyers Squibb Co., 156 N.J. 455, 462-63

(1998) (permitting the admission of hearsay statements about a

company's hiring decision that was attributed to specific,

identified executives "directly involved in the hiring process"

because "the statements concerned an issue within the scope of

their duties"); see also Griffin v. City of E. Orange, 225 N.J.

400, 419-20 (2016); Biunno, Weissbard & Zegas, Current N.J. Rules

of Evidence, cmt. 4 on N.J.R.E. 803 (2016) (noting that "N.J.R.E.

803(b)(4) sanctions the admissibility of admissions made by

agents, employees, or representatives . . . when the admissions

relate to matters within the performance duties of the agent,

representative, or employee").

 To determine if a statement qualifies as a vicarious

admission, the proponent must sufficiently identify the speaker.

 8 A-3251-14T1
Identification is important for two reasons. First, without

knowing the declarant's role within a company, the court cannot

determine whether the statement was within his or her employment's

scope. Accordingly, in Beasley v. Passaic County, we rejected an

employee's double hearsay testimony that his supervisor had "told

him that 'downtown' wanted plaintiff fired." 377 N.J. Super. 585,

603-04 (App. Div. 2005). Despite recognizing that "downtown"

likely referred to someone in the County administration, we

concluded "it was impossible to discern the specific declarant and

whether the statement was within that person's scope of

employment." Id. at 603. Cf. Carden v. Westinghouse Elec. Corp.,

850 F.2d 996, 998-1002 (3d Cir. 1988) (double hearsay statement,

in which supervisor told plaintiff "they wanted a younger person

for the job" without further identifying the declarants, was

inadmissible on identical grounds under the parallel federal rule

(emphasis added)).

 Second, the declarant must be identified in order to be

subject to cross-examination. Beasley, supra, 377 N.J. Super. at

603; see Nobero Co. v. Ferro Trucking, Inc., 107 N.J. Super. 394,

401-04 (App. Div. 1969) (permitting hearsay observations allegedly

made by one of two possible employees in part because both

employees were identified and testified about the statement). The

unavailability of the declarant is a fundamental basis for the

 9 A-3251-14T1
general exclusion of hearsay testimony, see James v. Ruiz, 440

N.J. Super. 45, 59-60 (App. Div. 2015), while the availability of

the declarant when the hearsay statement is a party admission

serves as an important justification for its admissibility, see

Biunno, supra, Current N.J. Rules of Evidence cmt. 1 on N.J.R.E.

803(b)(1) (2016) (noting that admissions are excepted from the

hearsay rule because the declarant "cannot complain of his

inability to confront and cross-examine the declarant, since he

himself is the declarant"); 4 Wigmore, supra, at § 1048, at 4-5.4

 Applying these principles, the trial court found that the

statements in the certification allegedly related by Musumeci and

Apgar were excludable for the same two reasons. First, the

statements fell beyond the scope of their employment. Second, the

original declarant who made the statements was unidentified and

the scope of his or her employment was unknown. Since we agree

4
 Plaintiff misplaces reliance on Nobero and Reisman v. Great Am.
Recreation, Inc., 266 N.J. Super. 87 (App. Div.) (affirming
admissibility of statements of unidentified employees, such as
"lift operator at the bottom of the slope[,]" that another
employee, named Mike, had collided with plaintiff on the ski slopes
and they had observed Mike was intoxicated), certif. denied, 134
N.J. 560 (1993). First, the declarants, though unidentified, were
identifiable and could be questioned, and in Nobero, they were.
Nobero, supra, 107 N.J. Super. at 404. Second, the unidentified
declarants reported empirical observations, not statements of
policy that implicated further questions regarding the precise
scope of an employee's responsibilities.

 10 A-3251-14T1
that at least one of these two bases applies to each of the two

statements, we affirm the trial court's conclusions.

 The certification clarifies that Musumeci's statements are

double hearsay: his description of the age-based policy was merely

a recitation of what he "was told" by "human resources." As the

trial court found, this oblique allusion to the original declarant

places the statement outside N.J.R.E. 803(b)(4)'s protection.

Much like the reference to "downtown" in Beasley, it is impossible

to identify the original speaker with any specificity or discern

whether the statement was within the declarant's scope of

employment or authority. We note that defendant's human resources

department included employees, like Apgar, who had no involvement

in crafting corporate hiring or firing policies. Moreover,

defendant would have no opportunity to bring in this declarant for

cross-examination.

 We are unpersuaded by plaintiff's argument that the double-

hearsay statement of the unidentified human resources person is

irrelevant, as Musumeci was himself authorized to articulate

corporate policy. First, according to Sperman's certification,

Musumeci was not expressing his own policy, but one allegedly

stated to him by an unidentified person in human resources. Thus,

proof of the corporate policy depended on the admissibility of the

unidentified declarant's statements, which the court properly

 11 A-3251-14T1
excluded. Second, even if the scope of Musumeci's employment were

relevant, we would defer to the trial court's fact-finding that

Musumeci's statement addressed matters outside the scope of his

employment. See Goodman, supra, 415 N.J. Super. at 225. Although

there was conflicting testimony about the scope of Musumeci's

authority, the court relied on sufficient credible evidence in

reaching its conclusion.

 As for the statements attributed to Apgar, we affirm the

trial court's conclusion that the hearsay statements were not

within the scope or authority of her employment. As she testified

during the 104 hearing, Apgar's position was solely focused on

recruiting and redeployment within the company. She explicitly

denied having any responsibilities to advise executive directors

about the policy. She was never trained by the company on the

policy, nor did she have any role in the formation or

implementation of the policy. In short, Apgar's position had

neither the appropriate authority or scope to qualify her hearsay

statement regarding defendant's corporate firing policy as a party

admission under N.J.R.E. 803(b)(4).

 In sum, we agree with the trial court's conclusion that the

statements in the certification regarding defendant's "going

forward" policy were inadmissible hearsay. Accordingly, the trial

 12 A-3251-14T1
court properly granted summary judgment in accordance with our

2011 instructions.

 In light of the foregoing discussion, we need not reach the

trial court's two alternative bases for rejecting the

certification: it is a sham affidavit, see Shelcusky v. Garjulio,

172 N.J. 185, 193 (2000), and it is inadmissible under N.J.R.E.

403 for being unduly prejudicial. Both conclusions are based on

the record evidence challenging the veracity of the certification.

That evidence includes Musumeci's and Apgar's direct refutations

during the Rule 104 hearing, as well as Sperman's inconsistent

accounts of his conversations in both the Rule 104 hearing and his

arbitration hearing. We also need not consider whether, in light

of this expanded record, "the evidence is so one-sided that

[defendant] . . . must prevail as a matter of law . . . ." Brill

v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).5

 Affirmed.

5
 Notably, much of the contradictory evidence was not in the record
before us on the previous appeal, which was assembled before the
Rule 104 hearing and also lacked transcripts from Sperman's
arbitration. See O'Brien, supra, 420 N.J. Super. at 269.

 13 A-3251-14T1